UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| MORRIS BART and | § | CIVIL ACTION NO. 21-_____ |
| MORRIS Bart, LLC | § | |
| | § | Division: _____; §_____ |
| *versus* | § | |
| | § | Judge: |
| ANDREW FAIR KIRKENDALL, *individually,*§ | | |
| KIRKENDALL DWYER, LLP, and | § | Magistrate: |
| KIRKENDALL DWYER II, LLP, | § | |
| | § | JURY DEMAND |

<u>**ORIGINAL COMPLAINT**</u>

Plaintiffs Morris Bart and Morris Bart, LLC, respectfully represent the following:

**PARTIES**

1.

The Plaintiffs are the following:

A.    MORRIS BART ("Bart"), plaintiff, is an individual who is domiciled and residing within this judicial district and therefore is a citizen of Louisiana for jurisdictional purposes.

B.    MORRIS BART LLC ("Bart Law Firm"), plaintiff, is a Louisiana limited liability company that is therefore a citizen of Louisiana for jurisdictional purposes. Bart Law Firm maintains its registered office within this judicial district, at 601 Poydras Street, 24th Floor, New Orleans, Louisiana, 70130.

2.

Made defendants herein are the following:

A.    ANDREW FAIR KIRKENDALL ("Kirkendall"), is an individual who, upon information and belief, is a citizen of the State of Texas; and

B.    KIRKENDALL DWYER, LLP ("Kirkendall Law Firm"), upon information and belief, is a Texas limited liability partnership, and therefore is a citizen of the State of Texas for jurisdictional purposes. Kirkendall Law Firm maintains an office within this judicial district, at 2424 Edenborn Avenue, Ste. 670, Metairie, Louisiana, 70001, from which office and elsewhere it conducts some of the activities of which the Plaintiffs complain hereinafter;

C.   KIRKENDALL DWYER II, LLP ("Kirkendall II Law Firm"), upon information and belief, is a Texas limited liability partnership, and therefore is a citizen of the State of Texas for jurisdictional purposes. Kirkendall II Law Firm maintains an office within this judicial district, at 2424 Edenborn Avenue, Ste. 670, Metairie, Louisiana, 70001, from which office and elsewhere it conducts some of the activities of which the Plaintiffs complain hereinafter;

## NATURE OF THIS ACTION, JURISDICTION, AND VENUE

### 3.

This Court has original jurisdiction for this action under 28 U.S.C. § 1331 for the claims being asserted hereinafter that arise under the laws of the United States, and this Court has ancillary jurisdiction under 42 U.S.C. § 1367 over the state-law claims being asserted. Such claims include claims for trademark infringement and trademark dilution under the Trademark Act of 1946, as amended, 15 U.S.C. §1051, *et seq.*, ("Lanham Act"), and for trademark infringement, unfair competition, misappropriation of name or likeness, misappropriation of business opportunities, tortious interference, and unjust enrichment under Louisiana law, all of which constitute unfair or deceptive acts or practices in violation of the Louisiana Unfair and Deceptive Trade Practices Act, La. R.S. 51:1428, *et seq.*

### 4.

This Court has jurisdiction over the subject matter of this action under Section 39 of the Lanham Act, 15 U.S.C. § 1121, and Chapter 85 of the Judiciary and Judicial Procedure Code, 28 U.S.C. § § 1331 and 1338, and has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a) because they are so related to the federal claims that they form part of the same case or controversy.

5.

Venue is proper in the Eastern District of Louisiana under 28 U.S.C. §§1391(b) and (c) because a substantial part of the events giving rise to the claims occurred in this district, damages were sustained in this district, and the Defendants have conducted business in this district and are subject to the Court's personal jurisdiction here.

## STATEMENT OF THE CASE

6.

This action arises out of Defendants' intentional use of the Plaintiffs' registered trademark to knowingly deceive and confuse consumers who are searching specifically for the Plaintiffs using the internet. Defendants' fraudulent scheme involves buying keyword advertising that incorporate Plaintiffs' registered mark. As a result of their ad buys, Google searches initiated by users that incorporate this registered mark return results that prominently include the Defendants' sponsored advertising of confusingly similar or generic legal services. For Google searches initiated by users on mobile devices, the Defendants' advertisements returned within the user's search results include confusingly similar or generic "click-to-call" ads. "Click-to-call" ads are a relatively new means of internet search engine advertising. The "click-to-call" ads target users on mobile devices. For those users, instead of returning a hyperlink to an advertiser's website, the search results return a link that when selected by the consumer causes a mobile device to dial a telephone call to a predetermined telephone number directed to the advertiser.

7.

Although the Defendants are based in Dallas, Texas, Defendants' advertisements are geo-targeting the New Orleans area, which is where Bart's home office is located. The

{00643844.DOCX;1}

3

Defendants, by sponsoring advertisements based on Plaintiffs' registered mark, intentionally redirect consumers seeking the Plaintiffs' legal services from the Plaintiffs to the Defendant-advertisers.

8.

Such ads are priced by Google in ever-higher prices depending on demand, so to further this illegal scheme Defendants have bid increasingly higher amounts to strategically place their own confusing and misleading ads next to—and often more prominently than—Plaintiffs' own ads in the same search results. Defendants have done so intentionally, so that when their ads appear next to or more prominently than the Plaintiffs' ads, a significant number of consumers searching specifically for the Plaintiffs will be confused and instead contact the Defendants, thereby misappropriating the Plaintiffs' goodwill and business opportunities.

9.

The Defendants' marketing practices aforesaid are intended to, and do, cause confusion or mistake, or deceive, as to the affiliation, connection, or association of the Defendants' advertising with Bart and his Bart Law Firm as to the origin, sponsorship, or approval of the Defendants' services or commercial activities by Bart and his Bart Law Firm.

10.

As with all advertising and new technology, there are both legitimate and illegitimate ways in which they can be used. Defendants' scheme and this lawsuit involve the latter. This is not a case about legitimate comparative advertising. Rather, Defendants are knowingly and intentionally using Plaintiffs' well-known mark to deceive and confuse consumers.

{00643844.DOCX;1}

**FACTS**

A.    **Morris Bart ("Bart") and Morris Bart, LLC (the "Bart Law Firm").**

11.

Bart began practicing in 1978 as a sole practitioner in New Orleans, sharing one secretary. When he entered the profession, the United States Supreme Court had recently upheld the right of lawyers to advertise their legal services, holding that lawyer advertising was commercial speech protected by the First Amendment. By 1980, Bart and his Bart Law Firm had become among the first lawyers and firms in Louisiana to advertise on television.

12.

Since then, the Bart Law Firm has grown into the largest, or one of the largest, personal injury law firms in the Gulf South with over 100 attorneys, and a support staff of well over 150. Bart and the Bart Law Firm operate from cities throughout Louisiana, Mississippi, Alabama, and Arkansas. Bart has spent a significant amount of resources and time in developing, promoting, and protecting his brand and intellectual property. He has lectured extensively on lawyer marketing.

13.

Since Bart first started advertising in 1980, he and his firm have engaged in continuous and extensive advertising and marketing efforts to promote the firm's legal services to the public. One or both of the Plaintiffs have continuously expended substantial time, effort, and resources for advertising and marketing campaigns, which include, but are not limited to, TV commercials, billboards, radio advertising, internet advertising, and sponsorships. These efforts have proven extraordinarily successful, as Bart is himself a well-known and familiar figure in the New Orleans metropolitan area.

14.

Through one or both Plaintiffs' marketing efforts, the names and phrases "Morris Bart," "one call, that's all!" "one click, that's it!" and the like, when used in connection with the promotion of the Plaintiffs' legal services, have acquired substantial recognition by the public seeking legal services and serve to uniquely identify the Plaintiffs' legal services.

15.

Due to aggressive, effective, and sustained marketing campaigns, Bart and the lawyers associated with him and the firm are now widely renowned throughout the Gulf South as preeminent personal injury lawyers. The Firm's lawyers represent injured parties in all types of personal injury cases.

16.

The Plaintiffs' success results from decades of high-quality legal work that has built a strong reputation for aggressively representing injured persons and their families. Over more than forty years, Bart and his Bart Law Firm have built a strong referral base comprised of several generations of satisfied clients and a strong reputation in the community.

17.

This reputation in the community has been further enhanced by Bart's own substantial civic and philanthropic endeavors. Among such endeavors, he partnered with New Orleans Pelicans professional basketball team for Bart's Flight School to provide school supplies and many other things to needy students. Another donation bestowed a new gym for the New Orleans Police Department's second district station. Bart has served on several corporate and charitable organization boards.

18.

This reputation is the result not only of hard work but also of the significant effort and expense that they have incurred in marketing and promotion of their services throughout the Gulf South.

**B.    The Bart Mark.**

19.

Bart registered an eponymous service mark, "Morris Bart" ("the Bart Mark"), with the United States Patent and Trade Office (U.S. Reg. No. 2,400,003) on October 31, 2000, and it remains in full force and effect. Registration gives rise to presumptions of validity, ownership, and exclusive right to use this mark throughout the United States in favor of Bart.

20.

This and other marks adopted by the Plaintiffs are inherently distinctive and serve to identify, and indicate the source of, Plaintiffs' services to the consuming public.

21.

As a result of Plaintiffs' long use and promotion of the Bart Mark, the mark has become distinctive. It identifies the Plaintiffs and distinguishes the Plaintiffs and their services from those of others. The mark has acquired such secondary meaning as to now identify the source or origin of Plaintiffs' services. As a result of these efforts by the Plaintiffs, the consuming public throughout the Gulf Coast region widely recognizes and associates the Bart Mark with the Plaintiffs.

22.

As a result of Plaintiffs' long and sustained use and promotion, the Bart Mark has acquired valuable and enforceable secondary meaning in the minds of the consuming public.

## C.    The Defendants' Misconduct.

23.

The claims set forth hereinafter arise out of the Defendants' participation in Google's advertising programs. Google operates a keyword-triggered internet advertising program known as "Google Ads" (also known as Google "AdWords") that generate advertisements returned to users of the Google search engine with search results on Google website, in response to user-initiated searches. Advertisers pay Google to include and display their advertisements prominently alongside a user's search results. Such sponsored advertisements appear most prominently, above other, non-sponsored or "organic" results.

24.

Advertisers participating in Google's advertising programs purchase, or bid escalating prices for, specified keywords, paying Google for the right to have their ads displayed most prominently, near or at the top of Google search results whenever an internet user searches for the advertiser-specified keywords. Competition among advertisers for a keyword increases the price that Google charges to an advertiser for user-initiated searches that include the keyword.

25.

Some advertisements returned with a user's search results include a hyperlink, the selection of which directs the user to the advertiser's web site. In this way, advertisers target

advertisements to users with expected interest in the advertiser's product or service, based on keywords in the searches.

26.

Google Ads also offers "call-only" ads, also known as "click-to-call" ads, directed to users who initiate a Google search from an internet-enabled mobile telephone. These ads are bid and purchased in the same way, to the same prominence and other effects, as the advertisements described in the preceding paragraphs, but instead of a hyperlink to the advertiser's web site, "click-to-call" advertisements contain a telephone icon to encourage users to click and thereby initiate a telephone call to the advertised business. Google charges advertisers a fee per click for these "call-only" ads.

27.

Defendant Kirkendall is a lawyer competing for personal injury clients with the Plaintiffs.

28.

Defendanta Kirkendall Law Firm and Kirkendall II Law Firm are organizations engaged in the business of practicing law in competition for personal injury clients with the Plaintiffs.

29.

Upon information and belief, the Defendants compete in whole or in part with the Plaintiffs for personal injury clients using the aforesaid Google advertising programs.

30.

The Plaintiffs are leaders among lawyers in using the internet to advertise their legal services. The Plaintiffs have marketed their legal services through the "morrisbart.com" internet domain and website.

31.

The Plaintiffs engage in a substantial amount of other internet advertising, including the purchase of keyword search engine advertising to attract users to the Bart Law Firm. Plaintiffs spend a considerable sum of money each month to advertise online, including the purchase of keyword ads through Google's search engine advertising programs.

32.

The Plaintiffs purchase advertising from Google using the Bart Mark as a keyword and generic terms related to the types of cases that they handle. All the search engine advertisements purchased by the Plaintiffs prominently identify the Plaintiffs or include the Bart Mark to clearly identify the Plaintiffs as the source of the advertisement. The Plaintiffs do not purchase keywords related to any other lawyer's name, firm, or mark.

33.

Upon information and belief, Defendants Kirkendall and the Defendant Law Firms engage in an unlawful and fraudulent advertising scheme by purchasing the Bart Mark as a keyword for their advertising and geo-targeting the advertising in the New Orleans area where Bart's home office is located. These actions are an attempt by Defendants to attract potential personal injury clients, in the New Orleans area, whose internet searches use the Bart Mark as a keyword, and who are interested in reaching the Plaintiffs. A user who clicks

on the hyperlink or a "click-to-call" advertisement sponsored by the Defendants is directed away from the Plaintiffs and to a website or call center operated by or for the Defendants.

34.

This fraudulent advertising scheme is intentionally deceptive and misleading in additional ways. The Defendants' sponsored advertisements that Google returns with a user's search results omit the Defendants' names. Instead, those sponsored advertisements are intentionally generic for personal injury lawyer services like those offered by the Plaintiffs, so that a search engine user who searches for the Plaintiffs and views those advertisements will not immediately understand that the ad does not belong to the Plaintiffs.

35.

Likewise, the website hyperlinked from the Defendants' sponsored advertisements and the persons who answer in the call center operated by or for the Defendants respond to the users who "click-to-call" are similarly vague and generic, omitting the names of a lawyer or law firm, so that a search engine user reaching the number will not understand, or will be delayed in understanding, that the user has not reached the Plaintiffs. In this manner, users seeking the Plaintiffs' services are likely to wrongfully believe, or are at substantial risk of confusion, that the provider of legal services that the user has reached is the Plaintiffs.

36.

This is particularly true for searches from mobile devices, when consumers are quickly searching and often when dealing with the stressful aftermath of an automobile accident. On a mobile device, the typeface of the ads is much smaller, and the only content displayed on the small screen of a mobile device is an advertisement directly below one or more of the Bart marks, which consumers have entered as a search term.

{00643844.DOCX;1}

37.

Upon information and belief, some of the Defendants' sponsored click-to-call ads that return with search results for the Bart Mark only appear when searches are initiated on mobile phones that are using cellular data and not connected to Wi-Fi, which is further evidence of geo-targeting. In this way, the Defendants' click-to-call advertisements triggered by the Bart Mark are presented when a mobile phone user is more likely to be seeking legal services like those offered by the Plaintiffs, outdoors or from a car, as may occur immediately after a motor vehicle accident.

38.

Defendants fraudulent scheme is intended to misappropriate from the Plaintiffs their goodwill and reputation that have become associated in the minds of consumers with the Bart Mark, and to thereby deceptively induce prospective clients who are seeking the Plaintiffs' services to mistakenly contact the Defendants and engage the Defendants' lawyers instead.

39.

By purchasing the Bart Mark for the Defendants' sponsored advertising, the Defendants intend to, and do, misappropriate the Plaintiffs' business opportunities.

40.

Also as part of their scheme, Defendants bid increasingly higher amounts for the Bart Mark as keyword advertisements to ensure the most prominent and conspicuous placements of the Defendants' advertisements. This increases the cost for the Plaintiffs to purchase their own Bart Mark for keyword searches, but also allows the Defendants'

advertisements to appear next to or before Plaintiffs' own ads, diminishing the value that the Plaintiffs receive for their own advertising that is triggered by the Bart Mark.

41.

By having their generic or confusing ads appear next to, above, and more prominently than the Plaintiffs' advertisements, the Defendants confuse consumers and cause more consumers searching specifically for the Plaintiffs to instead mistakenly contact the Defendants.

42.

Upon information and belief, the Defendants' employees and agents who answer the telephone calls initiated by the Defendants' click-to-call ads are instructed to answer the calls with a generic greeting such as "did you have an accident" or "tell me about your accident." This continues Defendants' scheme of deceiving consumers into believing that they have contacted the Bart Law Firm and are speaking with the Bart Law Firm, or someone affiliated with the Bart Law Firm. The Defendants' scheme is to keep confused consumers, who were specifically searching for Bart or the Bart Law Firm, on the telephone and talking to the Defendants' employees and agents as long as possible in a bait-and-switch effort to build rapport with the consumer and ultimately convince a consumer to engage the Defendants instead.

43.

In this manner, the Defendants wrongfully induce prospective clients who are trying to reach the Plaintiffs to engage instead the Plaintiffs' competitors. The nature of their scheme evinces the Defendants' bad-faith intent to trade on the Plaintiffs' goodwill and reputation and misappropriate the Plaintiffs' business opportunities.

{00643844.DOCX;1}

13

44.

Defendants have used and are using the Bart Mark in commerce, including in Louisiana. Defendants' use of the Bart Mark began after Plaintiffs developed rights in the Bart Mark and after the Bart Mark had acquired a secondary meaning associated in the minds of consumers with the Plaintiffs.

45.

The Defendants are not affiliated with or sponsored by the Plaintiffs and have never been authorized by the Plaintiffs to use the Bart Mark, or any mark confusingly similar to the Bart Mark.

46.

Defendants' unauthorized use of the Bart Mark is likely to cause confusion, mistake, and/or to deceive customers and potential customers of the parties as to some affiliation, connection, or association of the Defendants with the Plaintiffs, or as to the origin, sponsorship, or approval of the Defendants' services by the Plaintiffs.

47.

Defendants' unauthorized use of the Bart Mark falsely designates the origin of their services and falsely and misleadingly describes and misrepresents facts with respect to Defendants and their services.

48.

The Defendants' unauthorized use of the Bart Mark enables the Defendants to trade on and receive the benefit of goodwill that the Plaintiffs have accumulated at great and consistent effort and expense over more than forty years, and to gain acceptance for their

services not solely on their own merits, but on the reputation and goodwill associated with the Plaintiffs, the Bart Mark, and the Plaintiffs' legal services.

49.

Bart's advertising prominently features his name and likeness, so that his visage is also closely identified in the minds of consumers with the Bart Mark.

50.

Because of the close association in the minds of consumers between the Bart Mark and Bart's own name and likeness, the Defendants' unauthorized use of the Bart Mark allows them also to misappropriate Bart's name and likeness and/or the value associated with them.

51.

Significantly, Bart is identifiable from the Defendants' sponsored advertising because the Defendants' sponsored advertisements are, by design, displayed in proximity to the Bart Mark when a consumer uses the Bart Mark as a search term.

52.

Defendants' unauthorized use of the Bart Mark allows Defendants to misappropriate the results of Plaintiffs' efforts in developing their extensive advertising materials and costly marketing efforts, thereby enabling Defendants to gain a special advantage in competing with the Plaintiffs by avoiding the costs and burden incurred by the Plaintiffs in cultivating their strong reputation among consumers.

53.

The Defendants' unauthorized use of the Bart Mark is likely to dilute the well-known Bart Mark, as the Defendants' misuse aforesaid weakens the ability of the Bart Mark to

clearly and unmistakably distinguish the source of Plaintiffs' services, and thereby diminishes the value of the Bart Mark.

54.

The Defendants' unauthorized use of the Bart Mark unjustly enriches the Defendants at the Plaintiffs' expense. The Defendants have been and continue to be unjustly enriched by obtaining a benefit from Plaintiffs, taking unfair advantage of Plaintiffs and their goodwill. Specifically, Defendants have taken unfair advantage of Plaintiffs by trading on and profiting from the goodwill associated with the Bart Mark that the Plaintiffs have developed and own, resulting in the Defendants wrongfully misappropriating a monetary and reputational benefit for their own business and services.

55.

The Defendants' unauthorized use of the Bart Mark impairs and deprives the Plaintiffs of the ability to control the nature and quality of the services provided under the Bart Mark, and places the valuable reputation and goodwill of the Plaintiffs in the hands of the Defendants, over whom Plaintiffs have no control.

56.

The Defendants' unauthorized use of the Bart Mark has prevented an otherwise likely business relationship from forming between the Plaintiffs and their prospective consumers. Since Defendants began using the Bart Mark, the rate at which the Plaintiffs convert prospective consumers into clients through keyword advertising has been diminished, and that decrease coincides with Defendants' unauthorized use of the Bart Mark.

57.

The nature of Defendants' scheme demonstrates that they intended to interfere with Plaintiffs' prospective relationships with consumers, and that they knew and desired that their use of the Bart Mark was certain or substantially certain to prevent Plaintiffs from forming business relationships with prospective consumers seeking the Plaintiffs. Such interference and misappropriation has harmed and damaged the Plaintiffs, and continues to do so.

58.

The aforesaid acts of the Defendants are causing an irreparable injury to the Plaintiffs.

59.

The injury to the Plaintiffs is irreparable because it may be difficult or impossible to fully quantify and thus compensate in money.

60.

Unless these acts of the Defendants are restrained by this Court, these acts will continue, and will continue to cause irreparable injury to Plaintiffs and to the public at large, for which there is no adequate remedy at law.

**COUNT I: FEDERAL TRADEMARK INFRINGEMENT**

61.

The Plaintiffs repeat the allegations above as if fully set forth here.

62.

The acts of the Defendants complained of herein constitute infringement of the federally registered Bart Mark, in violation of the Lanham Act, 15 U.S.C. §1114(1).

63.

The Defendants' acts complained of herein have been deliberate, willful, intentional, or in bad faith, with full knowledge and conscious disregard of Plaintiffs' rights in the Bart Mark, and with intent to cause confusion and to trade on Plaintiffs' vast goodwill associated with the Bart Mark. In view of the egregious nature of Defendants' infringement, this is an exceptional case within the meaning of 15 U.S.C. §1117(a).

## COUNT II: VIOLATION OF LANHAM ACT SECTION 43(a)

64.

Plaintiffs repeat the allegations above as if fully set forth here.

65.

The acts of Defendants complained of herein constitute trademark infringement, false designation of origin, false or misleading descriptions or representations of fact, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

66.

Plaintiffs have been damaged by Defendants' acts of trademark infringement, false designation of origin, false or misleading descriptions or misrepresentations of fact and unfair competition.

## COUNT III: LOUISIANA AND COMMON LAW TRADEMARK INFRINGEMENT

67.

Plaintiffs repeat the allegations above as if fully set forth here.

68.

The acts of the Defendants complained of herein constitute trademark infringement in violation of Louisiana law and of the common law of the Gulf Coast states beyond the borders of the State of Louisiana in which the Plaintiffs do business.

### COUNT IV: UNFAIR AND DECEPTIVE TRADE PRACTICES

69.

Plaintiffs repeat the allegations above as if fully set forth here.

70.

The acts of the Defendants complained of herein constitute unfair and deceptive trade practices in violation of the Louisiana Unfair and Deceptive Trade Practices Act, La. R.S. 51:1428, *et seq*.

### COUNT V: MISAPPROPRIATION OF NAME OR LIKENESS

71.

Plaintiffs repeat the allegations above as if fully set forth here.

72.

The acts of the Defendants complained of herein constitute misappropriation of Bart's name or likeness in violation of Louisiana law and the common law of the Gulf Coast states beyond the borders of the State of Louisiana in which the Plaintiffs do business.

### COUNT VI: MISAPPROPRIATION OF BUSINESS OPPORTUNITY

73.

Plaintiffs repeat the allegations above as if fully set forth here.

74.

The acts of the Defendants aforesaid complained of herein constitute misappropriation of a business opportunity (also known as unfair competition by misappropriation) in violation of Louisiana law and the common law of the Gulf Coast states beyond the borders of the State of Louisiana in which the Plaintiffs do business.

## COUNT VII: TORTIOUS INTERFERENCE

75.

Plaintiffs repeat the allegations above as if fully set forth here.

76.

The acts of Defendants complained of herein constitute tortious interference with a prospective business opportunity.

## COUNT VIII: UNJUST ENRICHMENT

77.

Plaintiffs repeat the allegations above as if fully set forth here.

78.

In addition, or in the alternative to the other counts set forth herein, the acts of the Defendants complained of herein resulted, *inter alia*, in an unjust enrichment of the Defendants and an impoverishment of the Plaintiffs that are not fully compensable, except pursuant to La. Civil Code Article 2098.

## JURY DEMAND

79.

The Plaintiffs desire, are entitled to, and demand a trial by jury.

**PRAYER FOR RELIEF**

WHEREFORE, Morris Bart and Morris Bart, LLC, pray that:

A.    Each and both of the Defendants, as well as their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of them, be permanently enjoined and restrained from (i) using the Bart Mark and any other mark or name confusingly similar to or likely to cause dilution of the Bart Mark, including by purchasing the Bart Mark or any confusingly similar marks as keyword advertisements, (ii) from misappropriating either Morris Bart's name or likeness or the Plaintiffs' business opportunities, and (iii) from any attempt to retain any part of the goodwill misappropriated from the Plaintiffs, including but not limited to purchasing the Bart Mark or any other mark developed by the Plaintiffs as keywords in advertising;

B.    Defendants, as well as their officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of them, be required to deliver up and destroy all text, graphics, internet postings, and advertisements, and any other materials bearing or using the Bart Mark and/or any other mark or name that is confusingly similar to or likely to dilute the Bart Mark;

C.    The Defendants be ordered to file with this Court and to serve upon the Plaintiffs, within 30 days after the entry and service on the Defendants of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

{00643844.DOCX;1}

21

D.    The Plaintiffs recover all damages that they have sustained as a result of the Defendants' activities, including but not limited to, all profits that the Defendants have derived as a result of the Defendants' advertising and other uses of the Bart Mark, and that the awarded damages be trebled, as the law provides;

E.    An accounting be directed to determine Defendants' profits resulting from their unlawful activities and that the Defendant disgorge and pay to the Plaintiffs such profits, increased as the Court finds to be just under the circumstances;

F.    The Plaintiffs recover their reasonable attorney fees;

G.    The Plaintiffs recover their costs of this action and prejudgment and post-judgment interest; and

H.    Plaintiffs recover such other relief as the Court deems appropriate.

Respectfully submitted,

LOWE, STEIN, HOFFMAN,
     ALLWEISS & HAUVER, LLP

MICHAEL R. ALLWEISS (La. Bar no. 2425) TA
     mallweiss@lowestein.com
MARK S. STEIN (La. Bar no. 12428)
     mstein@@lowestein.com
GREGORY S. MARSIGLIA (La. Bar no. 25158)
     gmarsiglia@lowestein.com
701 Poydras Street, Suite 3600
New Orleans, Louisiana 70139-7735
Tel: (504) 581-2450; Fax: (504) 581-2461

*Attorneys for Morris Bart and Morris Bart, LLC*

Date:    September 27, 2021.